**Henry TOMLIN, Administrator of the Estate of John Tomlin, Deceased**

v.

**CARSON HELICOPTERS, INC., Sikorsky Aircraft, Pratt & Whitney, Inc. and United Technologies, Inc.**

Civ. A. No. 87–2978.

United States District Court, E.D. Pennsylvania.

Nov. 15, 1988.

Arthur G. Raynes, Raynes, McCarty, Binder, Ross and Mundy, Philadelphia, Pa., for Tomlin.

E. David Chanin, Dechert Price & Rhoads, Philadelphia, Pa., for Sikorsky Aircraft, Pratt & Whitney, Inc., and United Technologies, Inc.

Joseph G. DeRespino, Hoyle, Morris & Kerr, Philadelphia, Pa., and Condon & Forsyth, Steven R. Stegich, III, New York City, for Carson Helicopters, Inc.

MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

*Background*

On April 20, 1985, a model H–34A/S58 helicopter designed and manufactured by

defendant Sikorsky Aircraft and owned and maintained by defendant Carson Helicopters, Inc., crashed into the Gulf of Mexico between one marine league and three marine leagues from the coast of Florida.[1] The pilot and both passengers were killed in the crash. This wrongful death action was brought on behalf of one of the passengers in the Court of Common Pleas of Philadelphia County on April 21, 1987.

On May 18, 1987, the defendants removed the case to this Court pursuant to 28 U.S.C. § 1441, which permits removal of "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." On June 17, 1987 the plaintiff filed a petition to remand this case to the state court, contending that because the complaint raised only state law wrongful death claims, the Court lacks subject matter jurisdiction.

### Discussion

In considering the petition for removal, the defendants bear the burden of establishing federal subject matter jurisdiction over the removal actions. *See Steel Valley Authority v. Union Switch and Signal Division,* 809 F.2d 1006, 1010 (3d Cir.1987); *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985); *see also* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 3739. In *Steel Valley Authority,* the Third Circuit noted "[i]t is settled that the removal statutes are to be strictly construed against removal and all doubt shall be resolved in favor of remand." *Steel Valley,* 809 F.2d at 1010 (footnotes omitted) (citing *Abels,* 770 F.2d at 29). Against this backdrop, the defendants seek to establish "original jurisdiction" under 28 U.S.C. § 1331 for purposes of removal under 28 U.S.C. § 1441.

To prevail, the defendants need to show that the complaint, which on its face relies exclusively on state law claims, arises under federal law. In support of removal, the defendants urge that plaintiff's wrongful death claims should be recharacterized as arising under DOHSA. Specifically, the defendants argue that because DOHSA's preemptive force provides an "inevitable" substitute federal wrongful death remedy, plaintiff's claims arise under DOHSA.

Under these circumstances, federal question jurisdiction is governed by the well-pleaded complaint rule and its corollary, the complete preemption doctrine. The well-pleaded complaint rule provides for jurisdiction only if a federal question is presented on the face of a properly pleaded complaint. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). Under this rule, the plaintiff is the master of his or her claim insofar as the plaintiff may avoid federal jurisdiction by exclusive reliance on state remedies. 107 S.Ct. at 2429 (footnotes omitted). Moreover, removal is improper if the federal issue, including federal preemption, arises as a defense. *Zemp v. Boeing Vertol Co.,* No. 87–1884, slip op. at 7 (E.D.Pa. July 28, 1987) [1987 WL 14851] (removal improper "even if both parties concede that the issue of preemption is the only or primary issue in question.") (citing *Caterpillar,* 107 S.Ct. at 2429).

However, the defendants urge application of the complete preemption doctrine, an independent corollary to the well-pleaded complaint rule. This doctrine provides federal subject matter jurisdiction where the extraordinary preemptive force of a statute converts a state law complaint into a federal claim. *Caterpillar,* 107 S.Ct. at 2430 (citing (*Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). As the *Caterpillar* Court explained "once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its

---

1. Under Section 1, the Death on the High Seas Act, 46 U.S.C.App. §§ 761–767 ("DOHSA") applies "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any state ..." 46 U.S.C. App. § 761.

inception, a federal claim, and therefore arises under federal law." *Id.* (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust of Southern Cal.*, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983)).

In this case, then, the threshold question is whether DOHSA has sufficiently extraordinary preemptive force to justify application of the complete preemption doctrine. While courts have applied the doctrine to several statutes [2], it is unclear whether application in these contexts is appropriate in view of the United States Supreme Court's decisions in *Metropolitan Life Insurance* and *Caterpillar*. The defendants in this case must show that application of the complete preemption doctrine is warranted in view of these recent Supreme Court pronouncements.

In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court applied the complete pre-emption doctrine to a state action that not only was preempted by ERISA but also fell within the scope of ERISA's civil enforcement section. Despite "the unique preemptive force of ERISA," the *Metropolitan Life* Court relied on the explicit reference to the *Avco* rule (the complete preemption doctrine) in the legislative history to overcome its reluctance to find the requisite extraordinary preemptive force. 107 S.Ct. at 1547–1548. The *Metropolitan Life* Court cautioned that "[i]n the absence of explicit direction from Congress, this case would be a close one." 107 S.Ct. at 1548. In concurrence, Justice Brennan offered the added caution that "[i]n future cases involving other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court." 107

S.Ct. at 1548 (Brennan, J., concurring). Thus, *Metropolitan Life* established that the touchstone for application of the complete preemption doctrine is Congressional intent for removal. 107 S.Ct. at 1548 ("the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress.").

Furthermore, this Court rejects any suggestion that *Caterpillar* abrogates the requirements established by the Court two months earlier in *Metropolitan Life*. In ruling that § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, did not preempt the *Caterpillar* plaintiff's claim, the Court cautioned that its decision included only an outline of the framework set out more fully in *Metropolitan Life*. *Caterpillar*, 107 S.Ct. at 2429. Rather than reconsidering the standards of *Metropolitan Life*, the *Caterpillar* court determined only whether LMRA preemption was applicable in that action. In *Caterpillar*, the Court did not focus on the boundaries of appropriate application of the complete preemption doctrine to a particular statute, already having noted that "[t]he complete preemption corollary is applied primarily in cases raising claims preempted by § 1 of the LMRA." 107 S.Ct. at 2430. Indeed, *Caterpillar* echoed *Metropolitan Life* in explaining, "[o]n occasion, the Court has concluded that the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 107 S.Ct. at 2430 (quoting *Metropolitan Life*, 107 S.Ct. at 1547.).

The court in *Zemp v. Boeing Vertol Co.*, No. 87–1884, slip op. (E.D.Pa. July 28, 1987) examined defendant Boeing's claim that

---

**2.** Senior District Judge Donald W. Van Artsdalen, in *Zemp v. Boeing Vertol*, No. 87–1884, slip op. at 7 (E.D.Pa. July 28, 1987), noted that several courts have applied the complete preemption doctrine in contexts beyond the contexts in the seminal case of *Avco Corp. v. Aero Lodge No. 735, Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) and in later Supreme Court decisions. *Zemp,* slip op. at 7 (citing *Nordlicht v. New York Telephone Co.,* 799

F.2d 859, 861 (2d Cir.1986)) (federal common law of action regarding charges for interstate telephone communications); *Olquin v. Inspiration Consolidated Copper Company,* 740 F.2d 1468, 1475–1476 (9th Cir.1984) (Federal Mine Safety and Health Act, 30 U.S.C. § 801); *Clinch v. Montana AFL–CIO,* 633 F.Supp. 872, 876 (D.Mont.1986) (Job Training Partnership Act, 29 U.S.C. § 1501).

DOHSA's preemptive force warranted application of the complete preemption doctrine under *Metropolitan Life* and *Caterpillar*. In *Zemp*, plaintiffs had filed several actions based on Pennsylvania wrongful death and survival statutes following a November 6, 1986 crash of a helicopter, which had been ferrying offshore oil rig workers over the North Sea. After tracing the development of the complete preemption doctrine, the *Zemp* court refused to apply the doctrine to DOHSA. *Zemp,* slip op. at 10. Citing the United States Supreme Court's call for evidence of Congressional intent for removal jurisdiction, the *Zemp* court explained that "[w]ithout some indication from Congress or the Court that the complete preemption doctrine should be expanded to encompass DOHSA, I decline to take such a course." *Zemp* slip op. at 10.

The defendant argues that *Zemp* [3] was improperly decided in view of the recent Supreme Court case, *Offshore Logistics v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). In a 5–4 ruling the *Tallentire* Court characterized DOHSA's § 7 as a jurisdictional savings clause enabling state courts to hear DOHSA claims. 106 S.Ct. at 2500. The *Tallentire* majority determined that § 7 does not authorize application of additional state wrongful death remedies in cases where DOHSA remedies apply. *Id.* Here, the *Tallentire* majority opined that "federal interests are primary" in reference to the purpose of Congress "in making a uniform provision for recovery for wrongful deaths on the high seas." *Id.* Based on this interpretation of § 7, the Court reasoned that "the conclusion that the state statutes are preempted by DOHSA where it applies is inevitable." *Id.*

Thus, while the federal defense established in *Tallentire* is not alone sufficient to establish the extraordinary preemptive force required by *Metropolitan Life* and *Caterpillar,* the "inevitability" of DOHSA preemptive force as characterized by the *Tallentire* majority is some evidence of the requisite force. Nevertheless, under *Metropolitan Life* and *Caterpillar,* this Court must find evidence from which to infer Congressional intent for removal jurisdiction. In this search, *Tallentire* is not helpful.

In dissent, Justice Powell assailed the *Tallentire* majority's interpretation claiming that "the Court's reading of § 7 is at odds with the language of the statute and its legislative history." *Tallentire,* 106 S.Ct. at 2501 (Powell, J., dissenting). Justice Powell's dissent, in which Justices Brennan, Marshall and Stevens joined, undermines the defendant's suggestion that Congress intended that DOHSA wield the extraordinary preemptive force required to permit removal jurisdiction. Further, the *Tallentire* majority made no suggestion that Congress intended actions preempted by DOHSA be removable. So, while this Court is bound by *Tallentire* to preempt state wrongful death claims where DOHSA applies, *Tallentire* does not show that DOHSA wields the extraordinary preemptive powers required by *Metropolitan Life* and *Caterpillar.*

### Conclusion

In sum, the defendants have failed to show adequate support, in the legislative history or in case law, for their claim that the complete preemption doctrine should be extended to provide federal question jurisdiction in this case. Accordingly, this Court will follow Senior Judge Van Artsdalen's opinion in *Zemp v. Boeing Vertol* and decline to expand the complete preemption doctrine to DOHSA.[4] Without applica-

---

**3.** Although the *Zemp* court considered *Tallentire,* the *Zemp* court did not view *Tallentire* as authority to extend removal jurisdiction to DOHSA. *See Zemp,* slip op. at 14; *see also Metropolitan Life,* 107 S.Ct. at 1548 ("Indeed, as we have noted, even an 'obvious' preemption defense does not, in most cases, create removal jurisdiction.").

**4.** This Court declines to follow *Kearney v. Litton Precision Gear,* No. 87–8335–KN, slip op.,

(C.D.Cal. March 22, 1988), (DOHSA claim removable). *Kearney,* at ⸺ slip op. at 2 (declining to follow *Filho v. Pozos International Drilling Services, Inc.,* 662 F.Supp. 94 (S.D.Tex.1987)). In a one page Order, the Kearney court found removal jurisdiction without discussion of the rule or requirements of the complete preemption doctrine as mandated by the Supreme Court in *Metropolitan Life* and *Caterpillar.*

tion of the complete preemption doctrine, there is no federal question jurisdiction under the well-pleaded complaint rule. Therefore, under 28 U.S.C. § 1447(c), the case must be remanded to State Court because this Court is without subject matter jurisdiction.

An appropriate Order follows.

## ORDER

AND NOW, this 10th day of November 1988, upon consideration of Plaintiff's Petition for Remand (Docket Entry No. 8); Memorandum of Defendants in Opposition to Plaintiff's Petition for Remand (Docket Entry No. 15); Plaintiff's Memorandum in Response to Defendants' Memorandum in Opposition to Plaintiff's Petition for Remand (Docket Entry No. 17); Supplemental Memorandum of Defendant in Opposition to Plaintiff's Petition for Remand (Docket Entry No. 18); Supplemental Memorandum of Named Defendants Sikorsky Aircraft, United Technologies, Inc. and Pratt & Whitney, Inc. in Opposition to Plaintiff's Petition to Remand (Docket Entry No. 19); Transcript of February 11, 1988 Hearing on Motion to Remand (Docket Entry No. 24); Plaintiff's Post–Argument Memorandum of Law in Support of Plaintiff's Petition for Remand (Docket Entry No. 25); Defendants' Post–Argument Memorandum of Law in Opposition to Plaintiff's Petition for Remand (Docket Entry No. 26); Post–Argument Brief of Named Defendants Sikorsky Aircraft, United Technologies, Inc. and Pratt & Whitney, Inc. in Opposition to Plaintiff's Petition for Remand (Docket Entry No. 27); Plaintiff's Memorandum of Law in Response to Defendants' Post–Argument Memorandum of Law (Docket Entry No. 28); Defendants' Notice of Recent Decision (Docket Entry No. 29); May 25, 1988 letter from Arthur G. Raynes, Esq. addressing *Kearney v. Litton Precision Gear*, No. 87–8335–KN, slip op. (C.D.Cal. March 17, 1988) (Docket Entry No. 30), it is hereby ORDERED that the Plaintiff's Petition for Remand is GRANTED pursuant to 28 U.S.C. § 1447(c) and the within action is remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.